IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TEXAS COMPTROLLER OF PUBLIC ACCOUNTS,** | § § § | |
| Appellant, | § § | |
| v. | § § | Civil Action No. **3:18-CV-727-L** Bankruptcy Case No. 15-35093-SGJ-7 |
| **PATRICK TAYLOR ADAMS and LINDA ANN ADAMS,** | § § § § | |
| Appellees. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the appeal of the Texas Comptroller of Public Accounts (the "Comptroller"), filed March 27, 2018. After consideration of all briefing by the parties, the record on appeal, and the applicable law, the court **affirms** the bankruptcy court's March 13, 2018 Order Reinstating Stay as to State Comptroller ("Stay Order"), and **dismisses with prejudice** this appeal.

**I.      Factual and Procedural Background**

Patrick Taylor Adams ("Mr. Adams') and Linda Ann Adams' ("the Debtors") sought protection under Chapter 11 of the Bankruptcy Code on December 28, 2015, after losing a substantial amount of money in a new business venture involving a restaurant. Debtors' Plan of Reorganization ("Plan" or "Confirmation Order") was confirmed, as modified, on December 9, 2016. The Plan includes a provision requiring Debtors to make monthly payments of $3,604.07 to the Comptroller, beginning January 20, 2016. R. 30-31. The Plan further provides:

> A failure by the Debtors or Reorganized Debtors to make a plan payment to an agency of the State of Texas shall be an Event of Default. If the Debtors or Reorganized Debtors fail to cure an Event of Default as to an agency of the State of Texas within ten (10) days after service of a written notice of default, then that

**Memorandum Opinion and Order - Page 1**

>agency may (a) enforce the entire amount of its claims; (b) exercise any and all rights and remedies available under applicable nonbankruptcy law; and (c) seek such relief as may be appropriate in this court. The Debtors and/or Reorganized Debtors can receive up to three (3) notices of default; however, the third default cannot be cured.

R. 31. The source of these payments was to come from revenue generated by a profitable office furniture business that Debtors had owned and operated for thirty-two years. After Debtors were late on more than two occasions in 2017 in making their monthly payments to the Comptroller, the Comptroller declared a default in accordance with the Plan and threatened to seize all of Debtors' furniture business inventory.

On December 18, 2017, Debtors moved to reinstate the automatic stay as to the Comptroller "to allow [them] to reinstate the Plan payments." R. 26. Debtors asserted that they were prepared to bring all payments then due to the Comptroller under the Plan and maintained that, if they lost the income from their furniture business, they would not be able to pay the Comptroller or other creditors. The Comptroller opposed the relief sought by Debtors, contending that the relief sought by the Debtors—seeking to reinstate the automatic stay to prevent the Comptroller from pursuing its state rights and remedies as provided in the Confirmation Order—undermined the protections granted to it by the Confirmation Order. R. 22.

A hearing on the Debtors' motion was held on December 5, 2016, at which Mr. Adams testified, and both parties were allowed to question him and make oral arguments. The bankruptcy court also questioned Mr. Adams before granting Debtors' motion under 11 U.S.C. § 105(a) and making findings regarding each of the four requirements for injunctive relief. The bankruptcy court further explained during the hearing and in its Stay Order that the Debtors' motion was being granted to the extent that "the automatic stay [was] reinstated as to the Comptroller, but that the

**Memorandum Opinion and Order - Page 2**

automatic stay [would] again automatically lift if there [was] another event of default declared by the Comptroller." Stay Order 1.

This appeal followed on March 27, 2018. The Comptroller raises one issue on appeal: whether "the Order Reinstating the Automatic Stay as to the Comptroller, after a plan default by the Debtors, [is] barred by res judicata whe[n] the confirmation order provided default remedies to the Comptroller." Comptroller's Statement of Issues on Appeal 1. The events and corresponding facts giving rise to this appeal are not disputed. The parties, instead, dispute whether the bankruptcy court exceeded its authority under the Bankruptcy Code and applicable precedent. The Comptroller summarizes the facts relevant to its appeal as follows:

> Debtors operated Allure restaurant from late 2010 through 2015, and also operated Adams Office Furniture for thirty-two years. R000073. Debtors filed bankruptcy due to IRS collection efforts regarding withholding taxes that Debtors failed to pay for employees of Allure restaurant. R000073-74. The court confirmed Debtors' plan of reorganization on December 9, 2016. R000079. The Confirmation Order was amended on December 29, 2016. R000028. The Confirmation Order provided that in the event of a third default in payment to the Comptroller, the Comptroller may "(a) enforce the entire amount of its claims; (b) exercise any and all legal rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court." R000031. The Debtors defaulted on their plan payments to the Comptroller on three separate occasions. R000064, ll. 2-8; R000078, ll. 12-17. There is no dispute that proper notice of each default and an opportunity to cure were provided. R000022, para. 2.
>
> The Comptroller, relying on the clear, negotiated, and unequivocal language of the confirmation order, began collection procedures. R000064, ll.7-11. In response, the Debtors filed their Stay Motion to prevent the Comptroller from exercising its collection rights. R000025-27. After a hearing on the merits, the Bankruptcy Court entered the Stay Order, providing Debtors one additional default beyond the three agreed to by the parties (R000064, ll. 2-6) and provided for in the Confirmation Order. R000004; R000031.

Comptroller's Br. 4-5.

II.     **The Parties' Contentions**

The Comptroller summarizes its argument on appeal as follows:

> Finality is a core concept of the rule of law that gives confidence to the parties that a matter has been settled and put to rest. Bankruptcy Code Section 1141(a) clearly provides that both the Debtors and the Comptroller are bound by the terms of the Confirmed Chapter 11 Plan as modified by the Confirmation Order. Confirmation orders are final orders that are res judicata as to the issues that were raised, or could have been raised, at confirmation. However, despite no accusation or finding of wrongdoing on the part of the Comptroller, the Bankruptcy Court turned a blind eye to the res judicata effect of the Confirmation Order and improperly exercised its equitable powers under Bankruptcy Code Section 105 to rescue the Debtors from their own default.
>
> Applying a [TRO] standard, the Bankruptcy Court found that equitable concerns overrode the Confirmation Order. There is no dispute that the Debtors received notices of default and failed to cure the default under the Confirmation Order. There is no dispute that the Confirmation Order grants the Comptroller the right to pursue its collection remedies under state law. Rather than enforcing the explicit terms of its own Confirmation Order, the Bankruptcy Court opted to favor the Debtors at the expense of the Comptroller.

Comptroller's Br. 6.  The Comptroller contends that the bankruptcy court erred in entering the Stay Order because: (1) the Confirmation Order is res judicata on the issue of default remedies; and (2) equity cannot be used to undermine the res judicata effect of the Confirmation Order.  Regarding the first argument, the Comptroller asserts that the Confirmation Order was a final order for purposes of res judicata, and the "Stay Order undermines the Confirmation Order to the extent it reinstates the automatic stay, thereby nullifying the Comptroller's rights and protections and effectively granting the Debtor a fourth default" in contravention of the Confirmation Order. Comptroller's Br. 10.  The Comptroller, therefore, argues that the Debtors' Stay Motion was an improper "collateral attack on the Confirmation Order." *Id.*

Regarding the second argument, the Comptroller contends that the bankruptcy court acknowledged the finality of the Confirmation Order but, nevertheless, proceeded *sua sponte* to apply an incorrect temporary restraining order ("TRO") standard to prevent enforcement of the

**Memorandum Opinion and Order - Page 4**

Confirmation Order, even though the Debtors did not seek a TRO in their motion "(which would have required an adversary proceeding under Fed. R. Bankr. P. 7001(7)), did not allege any applicable standard that would apply to their motion, [and did not] cite a single authority to support the relief sought." *Id.* at 11. The Comptroller further asserts that "there is no authority that would support a [b]ankruptcy [c]ourt issuing a TRO to prevent its own confirmation order from being enforced." *Id.* (citing *In re Acorn Hotels, LLC*, 251 B.R. 696, 703 (Bankr. W.D. Tex. 2000), for the proposition that, in considering the modification of a confirmed plan, "[i]t is generally held that relief will not be appropriate if intervening rights have attached in reliance upon the judgment.").[1] The Comptroller contends that this issue was "confounded" by the bankruptcy court's application of a TRO standard, even though Debtors had not sought a TRO, and "[t]he first mention of a TRO was after the close of evidence (after which there was no opportunity for closing argument) when the Court announced its ruling." Comptroller's Br. 12 (citation omitted).

In addition, the Comptroller contends regarding its second argument that, the bankruptcy court relied solely on section 105 of the Bankruptcy Code, even though that section does not authorize a bankruptcy court to contravene Bankruptcy Code section 1141(a). The Comptroller argues that the Fifth Circuit and Supreme Court have consistently held that the equitable powers granted to bankruptcy courts under section 105(a) do not "constitute a roving commission to do equity" outside of the limits prescribed by the Bankruptcy Code. Comptroller's Br. 13.[2] The

---

[1] Although the relief sought by the Debtors, and granted by the bankruptcy court, had the effect of modifying the remedies available to the Comptroller under the Plan or preventing it from exercising those remedies after Debtors defaulted, neither party nor the bankruptcy court addressed the Debtors' motion in the context of a Plan modification, for example, under 11 U.S.C. § 1127(a), applicable to individual debtors.

[2] The Comptroller cites and quotes the following cases for support:

> [*United States*] v. *Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986); *see also, e.g., Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the

**Memorandum Opinion and Order - Page 5**

Comptroller, therefore, argues that the bankruptcy court improperly relied on section 105 to undermine and ignore section 1141(a), which makes the provisions of a confirmed plan binding on "the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor." *Id.* (quoting 11 U.S.C. § 1141(a)).

The Comptroller further asserts that, because section 1141(a) provides no exception that would operate to "unbind[] the parties to a confirmation plan," the binding nature of a confirmed plan is not altered when post-confirmation circumstances make compliance with the terms of a confirmed plan more difficult. Comptroller's Br. 14 (quoting *In re Christopher*, 148 B.R. 832, 837 (Bankr. N.D. Tex. 1992) ("The court cannot allow the facts of a particular case, however appealing, to sway it from the path along which the law directs it."); and citing *In re Page*, 118 B.R. 456 (Bankr. N.D. Tex. 1990), for the proposition that a debtor who became disabled post-confirmation was nonetheless bound by terms of a confirmed Chapter 11 plan). For this reason, the Comptroller contends that the Confirmation Order was binding and remained binding on both the Debtors and the Comptroller post-confirmation, the bankruptcy court "improperly applied Section 105 to contravene the clear effect of Section 1141(a)," and the "Stay Order should be reversed." Comptroller's Br. 14.

---

bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); *In re Oxford Mgmt.*, 4 F.3d 1329, 1333-34 (5th Cir. 1993) (Powers granted by § 105(a) must be exercised in a manner consistent with the Bankruptcy Code.); *In re Tex. Consumer Fin. Corp.*, 480 F.2d 1261, 1265 (5th Cir. 1973)("[T]he Bankruptcy Court's exercise of its equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act.").

*Id.* at 13.

**Memorandum Opinion and Order - Page 6**

Debtors filed a concise response in which they assert that the bankruptcy court properly exercised its jurisdiction, as retained in the Plan, and its authority under section 105(a) of the Bankruptcy Code in entering the Stay Order:

> A plan of reorganization cannot discriminate unfairly, and it has to be fair and equitable in order to be confirmed. 11 U.S.C. §1129(b). The Appellees' Confirmed Plan gave the Bankruptcy Court retained jurisdiction to address post-confirmation disputes that would discriminate unfairly or result in unfair or inequitable treatment of other classes of creditors. The Bankruptcy Code provides the Bankruptcy Court the equitable power to make adjustments post-confirmation to maintain fair and equitable treatment for all classes of creditors without unfairly discriminating. 11 U.S.C. §105(a). In this hearing, the Bankruptcy Court had to find that the facts justified its ruling, when applied to the competing provisions of Sections 105, 1129(b) and 1141 of the Bankruptcy Code and the Confirmation Order. Testing the facts for clear error does not result in leaving the Court with [a] definite and firm conviction that a mistake has been made. The Confirmation Order default provisions lifted the stay upon Appellees' default, but this Court should defer to the Bankruptcy Court's reasonable resolution of the ambiguities in interpreting the Confirmation Order in a situation in which all the payments had been made and yet default had occurred. Permitting the Appellant to shut down the business in an attempt to exercise all its statutory rights would preclude payment of the creditors under the Plan and would cause the landlord to lose a lucrative lease and would result in the loss of jobs for the employees. Even if this Court would have decided this motion differently, it is clear the Bankruptcy Judge did not abuse her discretion.
>
> The Bankruptcy Court did not issue a [TRO], but it analogized to Chapter 13 and TROs to explain the basis for fashioning a remedy under Section 105 of the Bankruptcy Code.

Debtors' Resp. 5-6.  Debtors, therefore, request that the court affirm the Stay Order.

The Comptroller replies that section 1129(b) cited by Debtors has no application after a plan in confirmed, and, once confirmed, the parties' rights "are defined by the plan and confirmation order under Section 1141 of the Bankruptcy Code." Comptroller's Reply 3. The Comptroller also disagrees with Debtors' contention that their Chapter 11 plan, as confirmed, is ambiguous and contends that their equity argument is not a valid basis for affirming the Stay Order:

**Memorandum Opinion and Order - Page 7**

> The Appellees' position that the Court has discretion to make changes to a confirmed plan for equitable considerations undermines the entire purpose of the Chapter 11 bankruptcy process and directly contradicts the Bankruptcy Code as well as long established law in the Fifth Circuit.
>
> Appellees ask this Court to conclude that the Bankruptcy Court was reasonable in reinstating the automatic stay and invalidating the agreed upon default language in the final Confirmation Order. However, the only issue on this appeal is not whether the Bankruptcy Court was reasonable or had abused its discretion but whether it had the authority to invalidate the terms of the Confirmation Order for equitable reasons under Section 105(a) of the Bankruptcy Code.
>
> . . .
>
> Section 1141(a) of the Bankruptcy Code and Fifth Circuit case law make clear the Confirmation Order is res judicata as to all issues that were, or could have been, raised at the confirmation hearing. The parties negotiated an agreement on the default language to resolve Appellant's objection to confirmation. [RR000064, ll. 2-6]. The default language in the Confirmation Order is plain on its face.
>
> The Fifth Circuit law is clear: Section 105(a) can only be used in a manner consistent with the provisions of the Bankruptcy Code and cannot be used on its own to create substantive rights or give blanket authority to fashion remedies in the name of equity.

Comptroller's Reply 1-3 (citations omitted).

### III.  Legal Standard–Bankruptcy Appeals

In a bankruptcy appeal, district courts review bankruptcy court rulings and decisions under the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law de novo. *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003); *In re National Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

### IV.  Discussion

At the heart of the parties' dispute is whether the bankruptcy court lacked authority under section 105(a) of the Bankruptcy Code to enter an order reinstating the automatic stay as to the

**Memorandum Opinion and Order - Page 8**

Comptroller, thereby preventing it from exercising its Plan remedies after Debtors failed a third time to make their monthly payments by the due date. Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Continuance or reinstatement of an automatic stay "is within the bankruptcy court's authority under 11 U.S.C. § 105(a)." *See In re Martin Exploration Co.*, 731 F.2d 1210 (5th Cir. 1984) (affirming bankruptcy court's continuation of automatic stay under section 105(a), which "amounted to the issuance of a new stay"). The continuation or reinstatement of the automatic stay under Section 105 is a form of injunctive relief, so the four requirements for injunctive relief must be satisfied.[3] *Prudential Ins. Co. of Am. v. Ryan Place Joint Venture*, 93 B.R. 471, 474 & n.9 (N.D. Tex. 1988) (citing *Sunbelt Savings Assoc. of Tex. v. Truman*, 95 B.R. 55, 57 (N.D. Tex. 1988)) (other citations omitted).

As noted, the bankruptcy court explained during the hearing on Debtors' motion that it was granting their request to reinstate the automatic stay as to the Comptroller based on the authority granted to it under section 105(a). The bankruptcy court addressed and made findings as to each of the requirements for injunctive relief, to which no objection was made by the Comptroller during the hearing or in this appeal. The Comptroller, instead, argues that the bankruptcy court erred in issuing injunctive relief because the Debtors did not seek injunctive relief. To the contrary, the

---

[3] The traditional requirements for preliminary injunctions are: "(1) a strong or substantial probability of success on the merits; (2) irreparable injury to the movant if the injunction does not issue; (3) the issuance of the preliminary injunction will not cause substantial harm to others; and (4) the public interest will best be served by issuing the preliminary injunction." *Prudential Ins. Co. of Am.*, 93 B.R. at 474 n.9.

**Memorandum Opinion and Order - Page 9**

Debtors requested, and the bankruptcy court granted, reinstatement of the automatic stay as to the Comptroller, and bankruptcy court appropriately exercised its authority under section 105(a) in granting that relief.

As noted, the Comptroller also argues, in passing, that the issue at hand was "confounded" because "[t]he first mention of a TRO was after the close of evidence (after which there was no opportunity for closing argument) when the Court announced its ruling." Comptroller's Br. 12 (citation omitted). Section 105(a), however, allows the bankruptcy court to *sua sponte* take necessary action or make any necessary or appropriate determinations.

Moreover, this issue was not included in the Comptroller's Statement of Issues on appeal. Even if properly before the court, this contention is without merit. The transcript of the hearing indicates that the Comptroller had the opportunity to put on evidence and question Mr. Adams but chose not to do so. The Comptroller's counsel also had the opportunity to present argument in opposition to the Debtors' motion, and the court sees no reason why he could not have requested to present further argument if he thought it was necessary or, at a minimum, he could have timely objected. Accordingly, this argument appears to have been nothing more than an afterthought. Regardless, the court is not aware of any legal authority that requires the bankruptcy court to announce its decision beforehand, so the parties can put on evidence or argument in an effort to persuade the bankruptcy judge to change his or her ruling.

V.     **Conclusion**

For the reasons explained, the court finds no error in the bankruptcy court order appealed by the Comptroller. The court, therefore, **affirms** the bankruptcy court's March 13, 2018 Order Reinstating Stay as to State Comptroller, and **dismisses with prejudice** this appeal. Pursuant to

**Memorandum Opinion and Order - Page 10**

Bankruptcy Rule 8016, the clerk of the court is **directed** to prepare, sign, and enter judgment upon receipt of and in accordance with this memorandum opinion and order. All reasonable and allowable costs are to be taxed against Appellant.

**It is so ordered** this 31st day of May, 2020.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge